MERRICK GARLAND
Attorney General
RANDY S. GROSSMAN
United States Attorney
MICHAEL G. WHEAT, CBN 118598
JOSEPH J.M. ORABONA, CBN 223317
JANAKI G. CHOPRA, CBN 272246
COLIN M. MCDONALD, CBN 286561
ANDREW Y. CHIANG, NYBN 4765012
Special Attorneys of the United States
880 Front Street, Room 6293
San Diego, CA 92101
619-546-8437/7951/8817/9144/8756
Michael.Wheat@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>DONNA YUK LAN LEONG (1),<br>MAX JOHN SWORD (2),<br>ROY KEIJI AMEMIYA, JR. (3),<br><br>Defendants. | CR No. 21-00142-LEK<br><br>UNITED STATES' RESPONSE IN OPPOSITION TO LEONG'S MOTION TO UNSEAL GRAND JURY MATERIALS AND SWORD'S MOTION FOR JOINDER [ECF 232, 241]<br><br>Date: May 31, 2023<br>Time: 10:30 a.m.<br>Judge: Hon. Leslie E. Kobayashi |

I

INTRODUCTION

The law does not allow litigants to pierce the grand jury's secrecy in order to embark on "across the board fishing expeditions." It does not permit a litigant to look into and revise the judgment of the grand jury for the purpose of challenging probable cause. And it does not accept speculative and unfounded assertions of what may or may

not have happened before the grand jury as sufficient statements of particularized need.

Leong's motion for grand jury material is all of these things. Leong starts from the untenable premise that she was indicted without probable cause—even though the fact of the indictment is the final, conclusive word on the matter. From there, she works backwards and surmises that the grand jury must have been misled on the facts or improperly instructed on the law—gilding her theory with quibbles about the allegations of the indictment (which this Court already found sufficient). Then, she asks for the grand jury transcripts as alleged *Brady/Giglio* evidence so she can either move to dismiss the indictment or further prepare her defense at trial.

A balancing analysis is straightforward when the movant does not place anything on the scales. Because the Supreme Court requires "a *strong* showing of particularized need for grand jury materials before any disclosure will be permitted," *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 443 (1983) (emphasis added), and because Leong's claims fall considerably short of that, this Court should deny her motion.

II

BACKGROUND

The grand jury charged defendants Leong, Amemiya, and Sword with conspiracy to commit federal program theft and wire fraud. ECF 1. At the center of the conspiracy was a $250,000 payoff to Louis Kealoha, the former chief of the Honolulu police department (HPD). ECF 1 at ¶ 32. Among other things, the indictment alleges that

Leong, as Honolulu's corporation counsel, Sword, as chairman of the police commission, and Amemiya, as the city's managing director, engaged in a concerted effort to fraudulently obtain city funds to secure Kealoha's payoff without obtaining the required approval from city council. ECF 1 at ¶¶ 17, 26–32.

The grand jury then returned a superseding indictment alleging the same conspiracy count and adding five additional counts of false statements with respect to Leong. ECF 79 at ¶¶ 34–36. In particular, the grand jury found probable cause that Leong: (a) falsely stated and represented to agents of the FBI that, as far as she was aware, the Acting HPD Chief was not involved in any conversation about Louis Kelaoha's payout agreement up to it being reached (Count 2); (b) falsely stated and represented to agents of the FBI that she did not have any conversations with Acting HPD Chief about the payment to Kealoha until after the Acting HPD Chief objected to the payment (Count 3); (c) falsely stated and represented to agents of the FBI that the first time the Acting HPD Chief objected to the payout to Louis Kealoha was after the agreement had been signed (Count 4); (d) falsely stated and represented to agents of the FBI that she never had any conversations with W.A. about the payment to Louis Kealoha (Count 5); and (e) falsely stated and represented to agents of the FBI that Deputy Corporation Counsel D.P. would not have been able to talk to anyone outside of HPC while they were negotiating Louis Kealoha's agreement because that was something Leong controlled very tightly. ECF 79 at ¶ 36. Each of these false statements

is in direct contravention to the overt acts discussed in the conspiracy. *See, e.g.,* ECF 79 at ¶¶ 33d, 33e, 33f, 33j, 33k, 33l (as to Counts 2, 3, 4, and 5); ¶¶ 33d (Count 6).

Leong now seeks an order compelling disclosure of grand jury materials. ECF 232. Leong presumes and speculates that she was likely indicted on the false statement charges without probable cause because, as she baldly claims, a review of the transcript of her interview reveals that "there is a legitimate concern that the grand jury was misled and manipulated by the prosecutors." ECF 232 at 2. In support of her claim, she speculates whether the grand jury was provided with "snippets" or the entire transcript or recording of her interview with the FBI. ECF 232 at 7. Thereafter, Leong spends much of her argument attacking the probable cause findings to each of the false statement charges – a matter to be decided by the petit jury at the upcoming trial and not one that the law has found meets the particularized need standard. ECF 232 at 8-24. Leong ends her attack by using phrases such "it could be that" or "it could form the basis" – leaving the Court little doubt that her arguments are entirely speculative. ECF 232 at 24. Leong finally turns the Court's attention to an unfounded claim that the grand jury transcripts must be produced because they allegedly constitute *Brady/Giglio* evidence. ECF 232 at 27-28.

As demonstrated below, none of Leong's arguments have legal or factual merit, let alone carries her burden of articulating a strong showing of particularized need that would justify an intrusion into the grand jury.

III

DISCUSSION

The Court should deny Leong's motion for three reasons. First, any contention about the lack of probable cause is a non-starter. The grand jury's return of the indictment and superseding indictment settles the question once and for all, so this Court should not indulge suggestions about grand jury irregularity based on lack of probable cause. Second, Leong's speculative claims of instructional error on the law is pure conjecture. The allegations in the superseding indictment do not hint of such errors, since the purpose of an indictment is to allege the elements of the offense and fairly inform defendants of the charge, not to preview the government's evidence. Third, Leong cannot compel the production of the grand jury transcripts by claiming without basis they are *Brady/Giglio* evidence that would "assist" with her defense because that logic would nullify the particularized need standard and existing legal precedent.

A. APPLICABLE LEGAL STANDARDS

There is "a long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958). Although disclosure may occur "preliminary to or in connection with a judicial proceeding" or when "a ground may exist to dismiss the indictment," *see* Fed. R. Crim. P. 6(e)(3)(E)(i) and (ii), the "indispensable secrecy" of the grand jury "must not be broken except where there is a *compelling* necessity." *Procter & Gamble*, at 682

(emphasis added). Indeed, "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings," which are guarded by the discretion of district judges who must "weigh carefully the competing interests . . . to determine whether grand jury transcripts should be released necessarily[.]" *Douglas Oil Co. v. Petro Stops Northwest*, 441 U.S. 211, 218 and 223 (1979).

This balancing test requires the party seeking disclosure to show three things: (1) the material sought "is needed to avoid a possible injustice in another judicial proceeding"; (2) "the need for disclosure is greater than the need for continued secrecy"; and (3) the request "is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222–23. "Such a showing must be made even when the grand jury whose transcripts are sought has concluded its operations[.]" *Id.*

Importantly, the Supreme Court has emphasized that courts may not simply act as "a virtual rubber stamp" based on a party's mere "assertion that it desires disclosure." *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 444 (1983). What Leong must present here is "a *strong showing* of particularized need for grand jury materials before any disclosure will be permitted." *Id.* at 443 (emphasis added). Such a showing necessarily involves demonstrating that "without the transcript a defense would be greatly prejudiced or that without reference to it an injustice would be done." *Douglas Oil*, 441 U.S. at 221 (quoting *Procter & Gamble*, at 356 U.S. at 682). This standard has heft, requiring a "substantial likelihood of gross or prejudicial irregularities in the

conduct of the grand jury. *United States v. Hardy*, 762 F.Supp. 1403, 1414 (D. Haw. 1991). This "particularized need" must be based on more than mere speculation. *See United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986).

B. THE GRAND JURY WASN'T MISLED

In contrast with this lofty requirement stands Leong's assertion that she needs to see grand jury transcripts because "there is a legitimate concern that the grand jury was misled and manipulated by the prosecutors" and "it is highly likely" that some of Leong's alleged false statements were unfairly taken out of context. ECF 232 at 2-7. Besides being wholly unsupported, these arguments are a dead-end. "The grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime." *Kaley v. United States*, 571 U.S. 320, 328 (2014). Thus, an indictment, "fair upon its face" (as this Court has decided it is), and "returned by a properly constituted grand jury" (there is no claim it was not), "*conclusively determines* the existence of probable cause to believe the defendant perpetrated the offense alleged." *Id.* (emphasis added; internal quotations omitted). Because this is so, Leong has "no right to relitigate that finding" in any forum. *Id.* at 322.

If complaints about probable cause must stop at "whatever the grand jury decides," *Kaley*, 571 U.S. at 341, such complaints cannot be a basis for reviewing the grand jury's deliberations. Instead, she wants the disclosure of transcripts to somehow impugn the grand jury's finding of probable cause. This is foreclosed by law. "[G]rand jury proceedings are

presumed lawful and regular." *See United States v. Fuller,* 2017 WL 3457166 at *6 (S.D. Cal. Aug. 11, 2017) (citing *Hamling v. United States*, 418 U.S. 87, 139 n. 23 (1974)).

Even if Leong could challenge the probable cause found by the grand jury, her challenge is based purely on speculation. Leong presumes that the grand jury was only provided with "snippets" of the exchange between her, the prosecutor, and the federal agents, which must have been taken out of context to make her answers appear false when a broader reading of the statements would purportedly show otherwise. This is not the case. A review of the overt acts in the superseding indictment and the transcript of the interview demonstrates that an ordinary person could reasonably agree that Leong made materially false statements. Leong understood the questions and her answers were unequivocal. Nevertheless, even if there is some argument to make concerning the ambiguity of the questioning and Leong's alleged misunderstanding, such an argument is more properly directed to the petit jury, not the grand jury, who has already made a conclusive finding of probable cause.

C. NO PARTICULARIZED NEED

If assertions about lack of probable cause go nowhere, so do arguments that build off their premise. Nevertheless, plowing ahead, Leong maintains that *because* there was likely no probable cause, the grand jury could have indicted her only if they were misled by the prosecutors as to the facts or the law. ECF 232 at 23-24. In addition to suffering from a dubious premise, this claim is simple conjecture that cannot stand on its own as

a *strong* showing of particularized need.

Time and time again, the Ninth Circuit has held that "[m]ere 'unsubstantiated, speculative assertions of improprieties in the proceedings' do not supply the 'particular need' required to outweigh the policy of grand jury secrecy." *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980); see *United States v. Perez*, 67 F.3d 1371, 1381 (9th Cir. 1995) (need was "speculative and fails"), withdrawn in part on other grounds, 116 F.3d 840 (9th Cir. 1997) (en banc); *United States v. DeTar*, 832 F.2d 1110, 1113 (9th Cir. 1987) (denying disclosure where defendant "supported his request for production of grand jury records on nothing but baseless speculation"); *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) (defendant "alleges no facts to support his second reason, which is therefore speculative"); *United States v. Claiborne*, 765 F.2d 784, 792 (9th Cir. 1985) ("Speculation cannot justify this court's intervention into the grand jury's proceedings"), abrogated in part on other grounds, *Ross v. Oklahoma*, 487 U.S. 81 (1988). In a similar vein, the Ninth Circuit has recognized that disclosure should not be ordered to facilitate "a fishing expedition," either. *Ferreboeuf*, at 835; *see also United States v. Leong*, 2022 WL 3092898 (D. Haw. Aug. 3, 2022) (citing *United States v. Finch*, 2010 WL 3834961 at *5 (D. Haw. Sept. 24, 2010). Thus, a defendant's "assertion that he has no way of knowing whether prosecutorial misconduct occurred does not constitute a particularized need outweighing the need for grand jury secrecy." *United States v. Bennett*, 702 F.2d 833, 836 (9th Cir. 1983).

Leong is obviously fishing, employing unsubstantiated, moribund, and speculative reasons as "an expression of a generalized hope . . . that [she] might find some defect in the grand jury proceedings. Such 'fishing expeditions' do not provide sufficient grounds for disclosure prior to or at trial." *Thomas v. United States*, 597 F.2d 656, 658 (8th Cir. 1979). The Court should not enable this type of behavior.

Furthermore, Leong's complaints that "it is difficult to see how anyone having access to [the transcript] could find probable cause as to the false statement charges in the superseding indictment, do not support her claims that the grand jury must have been misled or misinformed on the law. ECF 232 at 23-24. An indictment is not evidence, *United States v. Utz*, 886 F.2d 1148, 1151 (9th Cir. 1989), nor is its purpose to give defendants a preview of the evidence. Defendants need not be shown the "supporting evidence, but only the essential facts necessary to apprise a defendant of the crime charged." *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982). The United States has properly done so in this case, as the Court found in its March 29 order. See ECF 93. Indeed, "the issue in judging the sufficiency of the indictment is whether the indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, *not whether the Government can prove its case*." *Id.* (emphasis added); see *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) ("The test for sufficiency of the indictment is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards").

That the grand jury returned a facially valid indictment (and superseding indictment) supplies no cause for Leong to contend anything improper occurred before the grand jury.

D. THERE WAS NO MISCONDUCT

Even assuming, for the sake of argument, that Leong somehow made *some* showing of impropriety in the grand jury process—which she did not—it would still not justify a request for disclosure of grand jury information, since "[t]he claimed misconduct would not have compelled the dismissal of the first superseding indictment." *United States v. Murray*, 751 F.2d 1528, 1533 (9th Cir. 1985). In other words, if the disclosures sought possess little or no articulable litigation value, "instances of prosecutorial and grand jury misconduct . . . do not amount to the particularized need required to outweigh the secrecy of the grand jury proceedings." *Id.*

Such is the case here. Leong asserts without any support that she needs transcripts because "it could form the basis for a viable motion to dismiss." ECF 232 at 24. Yet "[t]o obtain discovery of grand jury transcripts based on prosecutorial misconduct, [the defendant] must also show that the alleged instances of misconduct would compel dismissal of the indictment." *United States v. Hee*, 2015 WL 6510345 at *6 (D. Haw. 2015) (citing *United States v. Murray*, 751 F.2d 1528, 1533 (9th Cir. 1985)).

Because "the judicial power to intervene in grand jury proceedings is frequently discussed, but rarely invoked," the Ninth Circuit has recognized that "an indictment may be dismissed only in flagrant cases of prosecutorial misconduct." *United States v.*

*Sears, Roebuck & Co., Inc.*, 719 F.2d 1386, 1390–91 (9th Cir. 1983) (cleaned up). To be certain, "[i]n the grand jury context, the only identified structural error to date is discrimination on account of race or sex in the selection of grand jurors." *United States v. Harmon*, 833 F.3d 1199, 1204 (9th Cir. 2016) (holding that failures to correct false testimony or disclose impeachment information do not fall within "this narrow structural category"). Leong speculates that "the grand jury was only provided with misleading snippets of the recording meeting and not the entirety of the transcript … [or it] could be that the grand jury was not properly advised on the law related to 1001 offenses." ECF 232 at 24. But her guesses do not hint that this case is one of those "flagrant cases" that could justify dismissal, nor do they reveal how the instructions and summations would bear that out. See *United States v. Wright*, 667 F.2d 793, 796 (9th Cir. 1982) ("Erroneous grand jury instructions do not automatically invalidate an otherwise proper grand jury indictment").

At the end of the day, Leong cannot even say whether the grand jury was misled or misinstructed at all. *Cf. United States v. Kenny*, 645 F.2d 1323, 1347 (9th Cir. 1981) ("We are not persuaded that the Constitution imposes the additional requirement that grand jurors receive legal instructions"). Her motion is thus tantamount to one in which disclosure is requested because otherwise "[she] has no way of knowing whether prosecutorial misconduct occurred[.]" *Bennett*, 702 F.2d at 836. This "does not constitute a particularized need outweighing the need for grand jury secrecy." *Id.*

Congress and the courts "have consistently stood ready to defend" the principle of grand jury secrecy "against unwarranted instruction," *Sells Engineering*, 463 U.S. at 425, "even when the grand jury whose transcripts are sought has concluded its operations." *Douglas Oil*, 441 U.S. at 222. "Even assuming the secrecy concerns here are slight," Leong still must establish "the requisite particularized need." *In re Grand Jury Proceedings*, 62 F.3d 1175, 1179 (9th Cir. 1995). Her demonstration may not simply bring competing interests into equipoise—her need must be "*greater* than the need for continued secrecy[.]" *Douglas Oil*, 441 U.S. at 222 (emphasis added). And she must show that this "compelling" need is one in which, absent the requested instructions and summations, her "defense would be greatly prejudiced or that without reference to it an injustice would be done." *Procter & Gamble*, 356 U.S. at 682.

Leong has failed to make this showing. By contrast, in *Dennis v. United States*, 384 U.S. 855 (1966), the Supreme Court underscored two reasons why the trial court was wrong to deny disclosure of the grand jury transcripts of key government witnesses. First, the defendants had made a "persuasive" showing that these witnesses likely had testified differently at trial than before the grand jury. *Id.* at 872–73. Second, using transcripts "to impeach a witness, to refresh his recollection, to test his credibility," is a settled need that promotes the administration of justice. *Id.* at 870.

Relying on a shaky legal premise and unsupported conjecture, Leong seeks to invade the grand jury's province in "a generalized hope . . . that [she] might find some

defect in the grand jury proceedings." *Thomas*, 597 F.2d at 658. This Court should not facilitate such a cavalier excursion.

E. BRADY/GIGLIO

As a last-ditch effort to obtain the grand jury transcripts, Leong contends, without knowing their contents, that they would likely contain *Brady/Giglio* evidence. Under *Brady v. Maryland*, 373 U.S. 83 (1963), "prosecutors have a duty to disclose exculpatory material on their own, without a request by the defendant. *Brady* material includes evidence that would help to impeach a prosecution witness." *Randolph v. People of the State of Cal.*, 380 F.3d 1133, 1148 (9th Cir. 2004) (emphasis added). "This responsibility [also] includes the duty required by *Giglio* to turn over to the defense in discovery all material information casting a shadow on a government witness's credibility." *United States v. Bernal-Obeso*, 989 F.2d 331, 334 (9th Cir. 1993) (emphasis added). However, "*Brady* is not a pre-trial discovery tool." *United States v. Diaz*, 2005 WL 1575191, at *2 (N.D. Cal. June 30, 2005). From *Brady*, "there is no reason to suppose that the Supreme Court … meant to announce a revolutionary doctrine requiring the prosecution to prepare the case for the defense." *United States v. Gleeson*, 264 F. Supp. 880, 884 (S.D.N.Y. 1967). The Second Circuit has persuasively explained that "[t]he rationale underlying *Brady* is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of [her] defense, but to assure that the defendant will not be denied access

to exculpatory evidence only known to the Government." *United States v. LeRoy*, 687 F.2d 610, 619 (2d Cir. 1982); *see also United States v. Ruggiero*, 472 F.2d 599, 604 (2d Cir. 1973) ("The purpose of the *Brady* rule is not to provide a defendant with a complete disclosure of all evidence in the government's file which might conceivably assist [her] in preparation of [her] defense, but to assure that [she] will not be denied access to exculpatory evidence known to the government but unknown to [her].").

Leong contends that she needs the grand jury transcripts to impeach three potential defense witnesses at trial – (former) Special Attorney Todd Robinson, Special Attorney Michael Wheat, and FBI Special Agent Darrin Sakanoi. Leong's request is essentially analogous to the one rejected by the Second Circuit in *United States v. Natale*, 526 F.2d 1160 (2d Cir. 1975). In *Natale*, the defendants complained that "the trial court erred in refusing to require the Government to produce grand jury testimony of the witness … prior to his being called as a defense witness." *Id.* at 1170. In describing the defendants' legal claim, the Second Circuit noted that "[t]he gloss which [the defendants] would have us read upon *Brady* is that the prosecution must provide evidence favorable to the defense which is given by a witness before the grand jury even though the witness is one who testifies at trial for the defense. This we decline to do." *Id.* The same should be the case here.

It is of no moment should the defense decide not to call the witnesses referenced above to testify at trial. In *Ruggiero*, the Second Circuit affirmed the trial court's denial

of access to grand jury transcripts for certain individuals, "none of whom was called by either side or testified at trial." 472 F.2d at 603-04. Leong has not provided the Court with any reason to distinguish herself from the holdings in *Natale* or *Ruggiero*.

Even if Leong could distinguish her case from *Natale* or *Ruggiero*, her request for the grand jury transcripts associated with the returned indictments is not yet ripe. None of the witnesses has testified yet. Thus, Leong's need for the transcripts is speculative and amounts to a "general allegation" of need. Put simply, Leong is on a fishing expedition. This is insufficient to meet the "particularized need" standard. *Dennis*, 384 U.S. at 870. Even if these transcripts were discoverable, absent *Natale* or *Ruggiero*, the United States is not required to produce prior statements by Government witnesses until after the witness has testified. *See* Fed. R. Crim. P. 26.2(a); 18 U.S.C. § 3500; *United States v. Wallace*, 848 F.2d 1464, 1470-71 (9th Cir. 1988).

Lastly, Leong has failed to make a strong showing of a particularized need to obtain these transcripts by simply alleging a blanket claim, without any support, that the contents are *Brady/Giglio* evidence. The Court should not permit Leong to circumvent the particularized need standard and obtain the advantage that would result from disclosure based on the mere fact that it would "assist" with her defense at trial. If that were the case, the import of existing Supreme Court and Ninth Circuit precedent requiring Leong to establish a particularized need, and not an across-the-board fishing expedition, would be nullified.

F. <u>SWORD'S JOINDER</u>

Sword filed a joinder to Leong's motion for grand jury materials. ECF 241. For the same reasons set forth herein, his joinder motion fails. Sword failed to meet his burden to demonstrate a strong showing of particularized need to obtain grand jury materials. Moreover, while Sword requested "all instructions given to the grand jury," ECF 241 at 3, the Court should deny his motion for the same reasons the Court denied Amemiya's request for grand jury instructions. *See* ECF 147.

IV

CONCLUSION

The United States respectfully requests that the Court deny Leong's motion to unseal grand jury materials and Sword's motion for joinder.

DATE: May 9, 2023

Respectfully submitted,

MERRICK GARLAND
United States Attorney General

RANDY S. GROSSMAN
United States Attorney

*/s/ Joseph J.M. Orabona*
MICHAEL G. WHEAT
JOSEPH J.M. ORABONA
JANAKI G. CHOPRA
COLIN M. MCDONALD
ANDREW Y. CHIANG
Special Attorneys

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DONNA YUK LAN LEONG, MAX JOHN SWORD, AND ROY KEIJI AMEMIYA, JR.,<br>Defendants. | CR No. 21-142-LEK<br>CERTIFICATE OF SERVICE |
|---|---|

IT IS HEREBY CERTIFIED that:

I, Joseph J.M. Orabona, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, CA 92101-8893.

I am not a party to the above-entitled action. I have caused service of the foregoing on all parties in this case by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 9, 2023.

*/s/ Joseph J.M. Orabona*
Joseph J.M. Orabona
Special Attorney