UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | CR. NO. 21-00142 LEK |
|---|---|
| Plaintiff, | |
| vs. | ORDER |
| DONNA YUK LAN LEONG (01), MAX JOHN SWORD (02), ROY KEIJI AMEMIYA JR. (03), | |
| Defendant. | |

**ORDER DENYING DEFENDANT ROY KEIJI AMEMIYA'S
MOTION TO DISMISS FOR VIOLATION OF HIS
FIRST AMENDMENT RIGHTS, [FILED 4/18/23 (DKT. NO. 231)]**

Defendant Roy Keiji Amemiya ("Amemiya") seeks dismissal of the First Superseding Indictment filed against him on the basis that the criminal charges against him violate his First Amendment rights under the United States Constitution. See Amemiya's Motion to Dismiss for Violation of His First Amendment Rights, filed 4/18/23 (dkt. no. 231) ("Motion"). Plaintiff United States of America ("the Government") opposes the Motion for the reason that that the First Amendment does not prohibit evidentiary use of speech to establish elements of a crime or for other purposes, such as motive or intent. Moreover, it argues that Amemiya is not indicted for his speech but is charged with conspiracy to commit a specific offense. Thus, the jury will be required to determine whether he agreed

to be a member of that conspiracy with the knowledge of at least one of its objectives, and whether he intended to help accomplish it.  [Govt.'s Response in Opposition to Defendant Roy Keiji Amemiya's Motion to Dismiss Under the First Amendment, ECF No. 231, filed 5/9/23 (dkt. no. 253) ("Mem. in Opp.").]

Amemiya filed his reply on May 16, 2023 and argues that he cannot be prosecuted for crimes based solely on his speech and exercise of his First Amendment rights.  See Reply Memorandum in Support of Defendant Roy Keiji Amemiya, Jr.'s Motion to Dismiss for Violation of His First Amendment Rights, filed 5/16/23 (dkt. no. 268) ("Reply").

For the reasons set forth below, the Motion is DENIED.

## **FACTUAL BACKGROUND**

The events underlying the criminal prosecution in this matter arise from the employment separation of former Honolulu Police Department ("HPD") Chief of Police Louis Kealoha ("Kealoha") from HPD.  Specifically, the Government alleges: that Kealoha (who, when the agreement was reached, had been the target of a federal criminal investigation and, as a result, had been placed on administrative leave as the chief of police) agreed to retire from HPD in exchange for a payment in the amount of $250,000; and that the Honolulu Police Commission ("Police Commission") approved this payment in return for Kealoha's retirement, and for his waiver and release of any

2

legal claims stemming from employment with or retirement from HPD.  See Indictment **First Superseding** ("Superseding Indictment"), filed 3/17/22 (dkt. no. 79), at ¶¶ 16-18.  Kealoha was subsequently indicted and convicted in United States v. Louis M. Kealoha, Cr. No. 17-00582(02) JMS-WRP, and United States v. Louis M. Kealoha, Cr. No. 18-00068(02) JMS-WRP.  At the time that the agreement was reached with Kealoha, Defendant Donna Yuk Lan Leong ("Leong") was the Corporation Counsel for the City and County of Honolulu ("City"), Defendant Max John Sword ("Sword") was the Chairperson of the Police Commission, and Amemiya was the City's Managing Director.  [Superseding Indictment at ¶¶ 1-3.]

The Government alleges, among other things, that the defendants conspired: to induce HPD to use its budget to fund the $250,000 payment to Kealoha; [id. at ¶ 27;] to attempt to have HPD make misleading representations to the Honolulu City Council ("City Council") to obtain funding to replace the money paid from HPD's budget for the $250,000 payment to Kealoha; [id. at ¶ 28;] and to attempt to persuade HPD not to disclose to the City Council that the $250,000 payment in the third quarter was the reason for HPD's request for additional funding in the fourth quarter, [id. at ¶ 29].

On December 16, 2021, the Government filed the initial Indictment against the defendants.  [Dkt. no. 1.]  These

defendants were charged with one count of conspiracy, in violation of 18 U.S.C. §§ 371, 666(a)(1)(A), and 1343; specifically, it was alleged that they conspired

> [t]o embezzle, steal, obtain by fraud and otherwise without authority . . . , in violation of Title 18, United States Code, Section 666(a)(1)(A); and, . . . [t]o devise and intend to devise, with the intent to defraud, . . . in violation of Title 18, United States Code, Section 1343.

[Indictment at pg. 9.]  Subsequently, on March 17, 2022, the Superseding Indictment was filed in which all the defendants were again charged with conspiracy, in violation of 18 U.S.C. §§ 371, 666(a)(1)(A), and 1343 (Count 1), and Leong was additionally charged with five counts of making false statements, in violation of 18 U.S.C. § 1001(a)(2) (Counts 2-6). See Superseding Indictment at pgs. 8-19.  The Government alleges the manner and means of this conspiracy involve:

- attempting to materially omit and conceal the details of the payment to Kealoha from the City Council and the public;
- inducing HPD to fund the payment to Kealoha from salary funds allocated to the HPD budget in order to avoid obtaining approval from the City Council for the payment;
- making or attempting to have HPD make materially false and misleading representations or omissions to the City

4

>       Council to obtain funds use for the payment to
>       Kealoha;
>
> -persuading or attempting to persuade HPD not to disclose
>       to the City Council that the reason it was seeking
>       additional funding for a salary shortfall was because
>       HPD funds were used to make the payment to Kealoha;
>
> -providing materially false and misleading statements to
>       federal agents during the federal investigation of the
>       payment to Kealoha;
>
> -sending communications and transmissions by interstate
>       wire to commit their scheme to defraud the City
>       Council and the public; and
>
> -inducing HPD to use more than $250,000 in public funds for
>       the payment to Kealoha.

See id. at ¶¶ 26-32.

### STANDARDS

I. **Motion to Dismiss**

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Where the indictment is based upon statute, the statutory language may be used in the indictment as a general description of the offense, "but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific

5

offense, . . . with which he is charged." Russell v. United States, 369 U.S. 749, 765 (1962) (quotation marks and citations omitted). Whether or not an indictment is sufficient depends on

> "whether the indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, not whether the Government can prove its case." United States v. Buckley, 689 F.2d 893, 897 (9th Cir. 1982), *cert. denied*, 460 U.S. 1086, 103 S. Ct. 1778, 76 L. Ed. 2d 349 (1983). For purposes of review, "[t]he allegations of the indictment are presumed to be true." Id. An indictment should be: "(1) read as a whole; (2) read to include facts which are necessarily implied; and (3) construed according to common sense." Id. at 899.

United States v. Blinder, 10 F.3d 1468, 1471 (9th Cir. 1993) (alteration in Blinder).

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss an indictment on the ground that the indictment "fail[s] to state an offense." In considering a motion to dismiss an indictment, "the district court is bound by the four corners of the indictment" and "must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." United States v. Boren, 278 F.3d 911, 914 (9th Cir. 2002) (citations omitted). No evidentiary hearing is required. Id.

**II. Elements of Conspiracy to Commit an Offense**

> First, the essence of conspiracy "is an agreement to commit an unlawful act." Iannelli v. United States, 420 U.S. 770, 777, 95 S. Ct. 1284, 43 L. Ed. 2d 616 (1975); see also Ocasio

6

[v. United States], 136 S. Ct. [1423,] 1429 [(2016)] ("A defendant must merely reach an agreement with the specific intent that the underlying crime be committed by some member of the conspiracy." (internal quotation marks and emphasis omitted)). The agreement itself is the offense, and it is not necessary for the government to prove that the defendant or other participants committed the unlawful object of the conspiracy. See Salinas v. United States, 522 U.S. 52, 65, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997). The government is not required to prove every detail of the agreement. See, e.g., United States v. Sharif, 817 F.2d 1375, 1378 (9th Cir. 1987) (rejecting the argument that "there can be no conspiracy without proof of . . . such terms as price, quantity, and time, place, and manner of delivery"). Rather, a fact-finder may infer the existence and scope of the agreement from the facts and circumstances established at trial. Iannelli, 420 U.S. at 777 n.10, 95 S. Ct. 1284; United States v. Espinoza-Valdez, 889 F.3d 654, 656 (9th Cir. 2018). "Once the existence of the conspiracy is shown, evidence establishing beyond a reasonable doubt a knowing connection of the defendant with the conspiracy, even though the connection is slight, is sufficient to convict him of knowing participation in the conspiracy." United States v. Meyers, 847 F.2d 1408, 1413 (9th Cir. 1988). At minimum, the government must "show that each defendant knew or had a reason to know of the scope of the conspiracy and that each defendant had reason to believe that their own benefits were dependent upon the success of the entire venture." United States v. Lapier, 796 F.3d 1090, 1095 (9th Cir. 2015) (quoting United States v. Kostoff, 585 F.2d 378, 380 (9th Cir. 1978) (per curiam)). When the government proves that a defendant had a knowing connection with an extensive enterprise (such as a drug trafficking organization) and had reason to know of its scope, a fact-finder may infer that the defendant agreed to the entire unlawful scheme. See United States v. Smith, 609 F.2d 1294, 1300 (9th Cir. 1979); see also United States v. Tarantino, 846 F.2d 1384, 1393 (D.C. Cir. 1988) (applying similar principles in a case involving several

7

>        defendants who were alleged members of an
>        extensive drug conspiracy).
>
>        Second, the government must prove that the
>        defendant had the "intent to effectuate the
>        object of the conspiracy." United States v. U.S.
>        Gypsum Co., 438 U.S. 422, 443 n.20, 98 S. Ct.
>        2864, 57 L. Ed. 2d 854 (1978); see also Salinas,
>        522 U.S. at 65, 118 S. Ct. 469 ("A conspirator
>        must intend to further an endeavor which, if
>        completed, would satisfy all of the elements of a
>        substantive criminal offense."). The Supreme
>        Court has established that "in order to sustain a
>        judgment of conviction on a charge of conspiracy
>        to violate a federal statute, the Government must
>        prove at least the degree of criminal intent
>        necessary for the substantive offense itself."
>        United States v. Feola, 420 U.S. 671, 686, 95 S.
>        Ct. 1255, 43 L. Ed.2d 541 (1975).

United States v. Collazo, 984 F.3d 1308, 1318–20 (9th Cir. 2021) (en banc) (some alterations in Collazo) (footnotes omitted).

## DISCUSSION

Amemiya argues that he cannot be prosecuted for statements that he made, which are described as overt acts in paragraphs 33(l), 33(y), 33(z), and 33(aa) of the First Superseding Indictment because his speech as described in each of these paragraphs are protected by the First Amendment. [Memorandum in Support of Motion ("Mem. in Supp.") at 7-8.] He is mistaken. The criminal charge against him is not for the speech described in those specific paragraphs but for agreeing with one or more of the defendants with the intent to accomplish the goal of the conspiracy

8

> [t]o embezzle, steal, obtain by fraud and otherwise without authority . . . , in violation of Title 18, United States Code, Section 666(a)(1)(A); and, . . . [t]o devise and intend to devise, with the intent to defraud, . . . in violation of Title 18, United States Code, Section 1343.

[Indictment at pg. 9.]

In Bradenburg v. Ohio, the Supreme Court found constitutionally impermissible a state statute that sought to punish mere advocacy and to forbid assembly with others. 395 U.S. 444, 447 (1969) (per curiam) (explaining that the constitutional guarantee of free speech restricts a State from limiting advocacy except where it "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action"). Here, as the Government points out, "[s]peech . . . plays a significant role in bringing about and proving any conspiracy." [Mem. in Opp. at 4 (citation omitted).] The distinction being that the allegations in the Superseding Indictment pertaining to Amemiya's speech are not being alleged as criminal violations, as in Bradenburg, but as overt acts demonstrating his knowledge of and agreement to accomplish the goal of the alleged conspiracy; namely, embezzlement of the City's funds or an intent to defraud the City. See Collazo, 984 F.3d at 1318–20 (elements of criminal conspiracy). Amemiya, in his Reply, argues that the Government attempts to characterize Amemiya's statement about "burning

9

bridges" as a threat and thus excepted from First Amendment protection.  [Reply at 9.]  Whether or not Amemiya's statement was intended or perceived as a threat is beside the point.  Again, his statements are part of what the Government alleges are overt acts of the charged conspiracy and not allegations that the acts themselves constitute criminal offenses.  The conspiracy charge against Amemiya therefore does not violate his First Amendment rights.

  Amemiya also argues that the legality of paying the Kealoha settlement amount without City Council approval is supported by precedent, or that the state of the law at the time that the Kealoha settlement amount was funded was debatable as to whether City Council approval was required.  [Mem. in Supp. at 11.]  Thus, he submits, this Court can determine "that the legality of the Agreement was either settled by relevant precedent or debatable," and with that determination, the allegations in these paragraphs "must be dismissed because his words were protected by the First Amendment rights."  [Id. at 11-12.]  The Government does not address this argument in its opposition.  This Court agrees that the issue of whether paying the Kealoha settlement amount without City Council approval was legally permissible at the time that Amemiya processed the release of government funds to pay the settlement appears to be a question of law and not a question of fact for the jury.  No

10

legal authority, however, is provided to support Amemiya's contention and thus this Court is unable to rule on the issue, much less grant dismissal on this basis.[1]

Amemiya also submits that the conspiracy charge against him is analogous to the theft of honest services charge against the defendants in United States v. Saathoof, 708 F. Supp. 2d 1020 (S.D. Cal. 2010).[2]  [Mem. in Supp. at 14.]  In Saathoof, the district court dismissed the honest services charges against the defendants because it concluded that "[b]ecause of the ambiguity of the honest services statute, and because it criminalizes conduct, the question of the statute's reach should be resolved in favor of lenity."  Saathoof, 708 F. Supp. 2d at 1034 (citation omitted).  The statutory crime alleged here, however, is different from the honest services statute and is not ambiguous.  More instructive is Kelly v. United States, in which the government charged government

---

[1] This Court notes that related issues are raised in Leong's Motion to Dismiss for Tenth Amendment and Due Process Violations, filed on April 18, 2023, and Amemiya' substantive joinder in that motion, filed on April 21, 2023.  [Dkt. nos. 230, 244.]

[2] Amemiya also cites United States v. Dahlstrom, 713 F.2d 1423 (9th Cir. 1983), [Mem. in Supp. at 12,] but Dahlstrom is distinguishable from the conspiracy charge against Amemiya because the substantive offense underlying the conspiracy charged in Dahlstrom (unlike in the instant case) required the government to prove the defendant's act was willful.  See Dahlstrom, 713 F.2d at 1426-27.

11

officials under federal statutes prohibiting wire fraud and fraud on a federally funded program or entity. See Kelly, 140 S. Ct. 1565, 1571 (2020) (noting that fraud statutes are limited to the protection of property rights and do not criminalize all acts of dishonesty by government officials); see also Order Denying Defendant's Motion to Dismiss, Filed January 31, 2022 [Dkt No. 31,] and Denying the Joinders in the Motion, Filed March 21, 2022 [Dkt. Nos. 89, 90], filed 3/29/22 (dkt. no. 93). Because the Government has fairly informed Amemiya of the alleged conspiracy to embezzle or to commit fraud to deprive the City of the money by making the payment to Kealoha, it has sufficiently informed him of the specific offense, and the offense charged does not infringe upon his rights under the First Amendment.

## CONCLUSION

For the foregoing reasons, Amemiya's Motion to Dismiss for Violation of His First Amendment Rights, filed April 18, 2023, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 26, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**USA V. DONNA YUK LAN LEONG, ET AL**; CR 21-00142 LEK; ORDER DENYING DEFENDANT ROY KEIJI AMEMIYA'S MOTION TO DISMISS FOR VIOLATION OF HIS FIRST AMENDMENT RIGHTS, [FILED 4/18/23 (DKT. NO. 231)]